## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

GOPLUS CORPORATION,

      Plaintiff,

    v.

CROWN EQUIPMENT CORPORATION,

      Defendant.

CIVIL ACTION NO.: 4:20-cv-34

## **O R D E R**

This case concerns a contract dispute between Plaintiff GoPlus Corporation ("GoPlus") and Defendant Crown Equipment Corporation ("Crown"). (Doc. 22.) These parties entered into an agreement under which Crown was to provide and install shelving in GoPlus's warehouse in Pooler, Georgia. (Id. at p. 2.) In its Amended Complaint, GoPlus alleges that Crown breached the agreement by failing to provide shelving that met GoPlus's sizing specifications and weight tolerances and also that Crown either intentionally or negligently misrepresented to GoPlus that the shelving would satisfy those requirements. (Id. at pp. 5–7.) The matter is now before the Court on Crown's Motion for Judgment on the Pleadings, in which Crown argues that the pleadings and exhibits attached thereto demonstrate that GoPlus cannot succeed on its claims for breach of contract and misrepresentation. (Doc. 26.) GoPlus filed a Response, (doc. 28), and Crown thereafter filed a Reply, (doc. 30). For the following reasons, the Court **DENIES** Crown's Motion.[1] (Id.)

---

[1] In response to GoPlus's initial Complaint, Crown filed a Motion for Judgment on the Pleadings, (doc. 7), and a Motion for Hearing, (doc. 17), requesting oral argument on its Motion. After GoPlus filed its Amended Complaint, (doc. 22), Crown withdrew its original Motion for Judgment on the Pleadings, (doc. 23), but the Motion for Hearing remains pending before the Court. Because Crown withdrew its original

## BACKGROUND

Because this matter is before the Court on a motion for judgment on the pleadings, the Court accepts all well-pleaded facts in the Amended Complaint as true and draws all reasonable inferences in favor of the non-movant.  Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006).

## I.      The Amended Complaint

This lawsuit focuses on an agreement entered into between GoPlus and Crown under which Crown agreed to supply and install shelving facilities in GoPlus's Pooler, Georgia, warehouse (the "Georgia Warehouse" and the "Georgia Warehouse agreement").  (Doc. 22, p. 2.)  Prior to entering into the Georgia Warehouse agreement, Crown had supplied and installed shelving facilities in several of GoPlus's warehouses throughout the United States, including GoPlus's Chicago warehouse.  (Id. at pp. 2, 4.)  On each prior occasion, GoPlus required the same specifications for its warehouse's shelving, including a 3,305-pound weight tolerance.  (Id.)  Thus, Crown had supplied and installed shelving with identical weight capacities in each prior GoPlus warehouse.  (Id. at p. 2.)

The negotiations leading up the execution of the Georgia Warehouse agreement began when, at an unspecified time, GoPlus requested bids to build out shelving facilities in the Georgia Warehouse.  (Id.)  The shelving's required specifications and weight capacity listed in GoPlus's bid request matched the specifications of the shelving Crown had previously installed in GoPlus's other warehouses.  (Id. at pp. 2–3.)  In November 2018, Crown submitted its first bid regarding the Georgia Warehouse, and the parties then engaged in several rounds of negotiation.  (Id. at p. 3.)  Crown's first bid quoted the project at $805,331.30 and explicitly acknowledged GoPlus's

Motion for Judgment on the Pleadings, the Court **DENIES as moot** Crown's Motion for Hearing, (doc. 17).

3,305-pound weight capacity requirement.  (Id.)  After GoPlus rejected the first bid, the parties

negotiated, and Crown submitted a second bid for $756,226.51, which GoPlus also rejected.  (Id.)

While the second bid—unlike the first bid—was silent as to the shelving's weight capacity, Crown

never indicated to GoPlus that the second bid deviated from GoPlus's requirements.  (Id.)  On

November 30, 2018, after further negotiation, Crown submitted a third bid for $700,000, which

GoPlus accepted.  (Id. at pp. 3, 5.)  The third bid quoted the project at a lower price, and according

to the Amended Complaint, "[d]uring negotiations between the first and third bids, [Crown account

manager B.J.] Quiliza represented on multiple occasions to Bruce Wu, GoPlus's Vice President,

that the alternative manufacturer's product would satisfy the same weight capacity at a cheaper

price."[2]  (Id. at p. 4.)  Furthermore, the third bid—like the second bid—omitted information

regarding the shelving's weight capacity.  (Id. at p. 3.)

    While the third bid may have been silent on the specifications and capacity requirements,

throughout the bidding and negotiation process, Crown acknowledged GoPlus's specified size and

weight capacity requirements and represented to GoPlus that the weight capacity of the Georgia

Warehouse shelving would match the weight capacity of the shelving Crown had installed in

GoPlus's other warehouses.  (Id. at pp. 3–4.)  Specifically, in September or October 2018 (before

Crown submitted its first bid), GoPlus informed Quiliza that the weight capacity of the shelving

in the Georgia Warehouse should match the 3,305-pound weight capacity of the shelving in

GoPlus's Chicago warehouse.  (Id. at p. 4.)  On October 4, 2018, GoPlus reiterated this requirement

to Quiliza by email.  (Id.)  According to the Amended Complaint, after being informed about the

weight capacity requirements, Quiliza "indicated Crown would deliver goods conforming to those

---

[2]  This is the sole reference in the Amended Complaint to an "alternative manufacturer's product."  (Doc.
22, p. 4.)  GoPlus's Amended Complaint contains no other references to manufacturers, much less to
"alternative" manufacturers.

requirements," and, sometime between the first and third bids, Quiliza made the aforementioned statement that "the alternative manufacturer's product would satisfy the same weight capacity at a cheaper price."  (Id.)

Relying on Crown's representations that the shelving in the third bid would satisfy GoPlus's requirements, GoPlus accepted Crown's third bid, which the parties agree operates as a contract (hereinafter, the "Contract").  (Id. at p. 5; doc. 24, pp. 4–5.)  However, at some point during or after Crown's installation of the shelving, GoPlus determined that the shelving facilities did not satisfy its size or 3,305-pound weight capacity requirements.  (Doc. 22, p. 5.)

GoPlus further alleges that post-contractual correspondence between the parties confirms that Crown understood GoPlus's weight capacity requirement.  (Id.)  Specifically, on January 21, 2019, Quiliza wrote to Wu, "Bruce you have said from the beginning of the Georgia project multiple times that your capacity is the same as Chicago's.  We have matched your capacity and engineered it for that [sic] materials."  (Id. at p. 4.)  Furthermore, in a February 7, 2019, letter from Crown to GoPlus, Quiliza wrote, "Crown has designed and quoted your storage rack project per your specific address and load capacities."  (Id.)

GoPlus now asserts claims for breach of contract (Count I) and intentional or negligent misrepresentation (Count II) against Crown for failing to provide shelving facilities that satisfied GoPlus's size and weight capacity requirements and for misrepresenting to GoPlus that the supplied shelving would satisfy those requirements.  (Id. at pp. 5–7.)

## II.    Exhibits to Crown's Answer

Crown attached several exhibits to its Answer to the Amended Complaint.  (Docs. 24-1, 24-2, 24-3, 24-4, 24-5, 24-6, 24-7, 24-8.)  Exhibit A is a copy of the Contract.  (Doc. 24-1.)  The Contract's first page provides the Bill of Materials, the Proposal Breakdown, and the Labor and

Services sections.  (Id. at p. 2.)  The Bill of Materials is a list of each shelving component that Crown obtained and used to build out the Georgia Warehouse's shelving facilities, including the quantity, model number, description, and size of each shelving component.  (Id.)  The weight capacity of any component or of the shelving installation as a whole is not explicitly stated in the Contract nor does the Contract mention the weight capacities of the shelving in GoPlus's other warehouses.  (See id.)  However, the Contract's next and final three pages provide the Contract's Terms & Conditions, (id. at pp. 3–5), and, under a section titled "Permitting & Engineering," the Contract states: "Pricing and related bill of materials is based on specifications and approximate floor & pallet capacities provided by the customer."  (Id. at p. 4.)  Within the Terms & Conditions section titled "Miscellaneous," the Contract includes, *inter alia*, the following provisions that are relevant to the Motion for Judgment on the Pleadings: (1) "This agreement shall be governed by and construed in accordance with the Uniform Commercial Code as adopted by Ohio under which jurisdiction Buyer consents.[;] and (2) "This agreement supersedes all prior written or oral agreements with respect to the subject matter hereof."  (Id. at p. 5.)

Exhibits B, C, D, and E, (docs. 24-2, 24-3, 24-4, 24-5, respectively), are email exchanges between the parties, after the Contract was executed, regarding GoPlus's concerns about the shelving system's size and weight capacity and the parties' efforts to resolve those concerns. Exhibit B is a chain of emails, dated January 22, 2019, exchanged between Wu and Quiliza in which Wu describes concerns with the shelving beams' weight capacity and the frame size.  (Doc. 24-2, pp. 2–3.)  Exhibit C is an email exchange, dated January 23, 2019, between GoPlus and Crown representatives discussing the parties' obligations under the Contract and whether the shelving components that Crown supplied and installed satisfied GoPlus's specifications.  (Doc. 24-3, pp. 2–4.)  Exhibit D is an email exchange, dated January 24 and 29, 2019, between GoPlus

and Crown representatives discussing the "frame issue" and the installation of column protectors at no cost to GoPlus to resolve that issue.  (Doc. 24-4, pp. 2–3.)  Exhibit E is an email thread, dated February 7, 2019, between Wu and Quiliza discussing "Crown's final proposal" to "satisfy [GoPlus's] needs" and "to complete the job."  (Doc. 24-5, p. 2.)  Exhibit E's email exchange references the "final proposal" as an attached document (which appears to be the document that is attached to the Answer as Exhibit F).  (Id.)

Exhibit F is a letter (hereinafter, the "Letter"), dated February 7, 2019, from Quiliza to Wu. (Doc. 24-6.)  This appears to be the same letter that GoPlus referenced and quoted from in its Amended Complaint.  (See doc. 22, p. 4.)  The Letter states:

> This letter is intended to address your concerns for our current racking project in 200 SH Morgan Parkway, Bloomingdale, GA 31302.
>
> Crown has designed and quoted your storage rack project per your specific address and load capacities.  The bill of materials is generated by a structural engineer, whom is contracted, paid and stamped by their P.E. (Professional Engineer).
>
> While the Georgia racking is engineered and designed to your needs, Go Plus Corporation in Fontana[,] California had to use larger base plates welded to the uprights per seismic regulations and city codes.
>
> The city of Bloomingdale, GA[,] did not require a bigger base plate due to their [sic] seismic zone specific to the address.
>
> Go Plus requested Crown to add column protectors at the base of the upright for added protection against forklift damage.
>
> With respect to our partnership, Crown agrees to provide additional materials and labor installed to satisfy all your concerns.
>
> This will conclude our final contract with no additional work or request for materials mentioned written or implied for his project.  Reference quote #BQGPG113018.

(Doc. 24-6, p. 2.)[3]

Exhibit G includes the Preliminary Racking Analyses for the Georgia Warehouse and GoPlus's Chicago warehouse, (doc. 24-7), and Exhibit H is an engineering design layout for the Georgia Warehouse, (doc. 24-8).

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Cunningham v. Dist. Attorney's Off. for Escambia Cty., 592 F.3d 1237, 1255 (11th Cir. 2010) (internal quotation and citation omitted).  Generally, to decide a motion for judgment on the pleadings, a court "may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them."  2 James Wm. Moore et al., Moore's Federal Practice - Civil § 12.38 (2018).  However, as described in greater detail in Discussion Section I, infra, documents that were attached to an answer but were not also attached to the complaint may only be considered if they meet certain requirements.  "The legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same." Marshall v. Safeco Ins. Co. of Ind., No.1:12-cv-113, 2013 WL 12155468, at *1 (S.D. Ga. Apr. 16, 2013).  Therefore, the Court must "accept as true all material facts alleged in the non-moving party's pleading, and . . . view those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1335 (11th Cir. 2014).  A complaint should be

---

[3] The Letter was signed by Quiliza.  (Doc. 24-6, p. 2.)  The bottom right corner of the Letter, however, also contains a signature block for GoPlus Corporation, showing Wu signed on behalf of GoPlus on February 8, 2019.  (Id.)

dismissed pursuant to Federal Rule of Civil Procedure 12(c) only if "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002); see also King v. Akima Glob. Servs., LLC, 775 F. App'x 617, 620 (11th Cir. 2019) (per curiam).

## DISCUSSION

### I.   External Documents

As an initial matter, the Court must determine what documents it may consider when ruling on Crown's Motion.  The parties agree that the Court may consider the Contract.  (Doc. 26, pp. 7–8; doc. 28, p. 4.)  However, the parties dispute whether the Court may consider the remainder of the exhibits attached to Crown's Answer to the Amended Complaint.  At bottom, GoPlus argues that the Court may not consider Crown's other attached exhibits without converting the Motion into one for summary judgment because those exhibits are not central to any of GoPlus's claims. (Doc. 28, pp. 4–7.)  Crown argues that the Court may consider the exhibits without converting its Motion into one for summary judgment because GoPlus does not dispute the authenticity of the exhibits and the exhibits are central to GoPlus's claims, which is evidenced by GoPlus's references to the contents of the exhibits in the Amended Complaint.  (Doc. 30, pp. 2–3.)

If matters outside the pleadings are presented to and not excluded by the court on a motion for judgment on the pleadings, the court must convert the motion into one for summary judgment and dispose of it as provided in Rule 56.  See Fed. R. Civ. P. 12(d).  Thus, when resolving a motion for judgment on the pleadings, a court must consider only the pleadings: the complaint, the answer, and any documents attached as exhibits.  Eisenberg v. City of Miami Beach, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014); see Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  While Federal Rule of Civil Procedure

10(c) indicates that written instruments attached to an answer are part of the pleading "for all purposes," the United States Court of Appeals for the Eleventh Circuit applies the "incorporation by reference" doctrine to determine whether a court may consider an answer's attachments on a motion for judgment on the pleadings.  See Horsley v. Feldt, 304 F.3d 1125, 1134–35 (11th Cir. 2002) ("The [incorporation by reference] doctrine . . . must apply for Rule 12(c) purposes to documents attached to answers . . . .  Otherwise, the conversion clause of Rule 12(c) would be too easily circumvented and disputed documents attached to an answer would have to be taken as true at the pleadings stage.").

Under the "incorporation by reference" doctrine, a document attached to an answer may be considered by a court without converting a motion for judgment on the pleadings into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.  Horsley, 304 F.3d at 1134; see also Hi-Tech Pharms., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.").  "'Undisputed' in this context means that the authenticity of the document is not challenged."  Horsley, 304 F.3d at 1134.  Additionally, a document is "central to a complaint when it is 'a necessary part of [a plaintiff's] effort to make out a claim.'"  Kalpakchian v. Bank of Am. Corp., 832 F. App'x 579, 583 (11th Cir. 2020) (quoting Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)).

## A.     Exhibits B, C, D, and E are not Central to GoPlus's Claims

The Court concludes that it cannot consider Exhibits B, C, D, and E without converting the Motion into one for summary judgment because the exhibits are not central to GoPlus's claims.  Crown argues that the exhibits are central to GoPlus's claims because GoPlus references the

exhibits in the Amended Complaint and relies on the parties' email exchanges to establish its breach of contract and misrepresentation claims.  (Doc. 26, pp. 7–8; doc. 30, p. 3.)  GoPlus references emails exchanged between the parties from September to October 2019; a January 21, 2019, correspondence between the parties; and the Letter, which is dated February 7, 2019.  (Doc. 22, pp. 3–4.)  However, Crown's exhibits are email exchanges dated January 22, January 23, January 24 and 29, and February 7, 2019.  (See docs. 24-2 (Exhibit B), 24-3 (Exhibit C), 24-4 (Exhibit D), 24-5 (Exhibit E), respectively).  Looking at the exhibits' dates, the Court concludes that Exhibits B, C, D, and E are not the same email exchanges that GoPlus references and relies on in its Amended Complaint to make out its claims.  At most, the attached email exchanges show a portion of the parties' post-contractual communications (but, notably, *not* the communications referenced in the Amended Complaint).  Thus, the Court cannot consider them without converting the Motion into one for summary judgment.  See Future Fibre Techs. Pty. Ltd. v. Optellios, Inc., No. 2:08-CV-00600-UA-DNF, 2009 WL 10669938, at *2 (M.D. Fla. May 7, 2009) ("The Complaint does not reference the [attached document], nor do the asserted claims rely on it . . . . [Thus], it is not central to Plaintiff's claim and cannot be considered for purposes of a 12(c) motion.").

**B.    Exhibit F is not Central to GoPlus's Claims**

The Court next turns to Exhibit F, which is the Letter described in more detail in Background Sections I and II, supra.  (See doc. 24-6.)  GoPlus referenced the Letter a single time in the Amended Complaint to support its contention that Crown understood GoPlus's weight capacity requirement.  (Doc. 22, p. 4 ("On February 7, 2019, by letter, Mr. Quiliza further acknowledged that 'Crown has designed and quoted your storage rack project per your specific address and load capacities.'").)  The Amended Complaint contains no other descriptions of or

references to the Letter, and the Letter was not attached as an exhibit thereto.  (See generally id.)
Crown, however, attached the Letter to its Answer and characterized the Letter as "an agreement"
between the parties for Crown to perform specific work at the Georgia Warehouse.  (Doc. 24, p.
5; doc. 24-6.)  In its Motion for Judgment on the Pleadings, Crown relies on Exhibit F—a full copy
of the Letter—to support its affirmative defense that the Letter "operates as an accord and
satisfaction" and bars GoPlus's claims.  (Doc. 26, pp. 9–11, 19.)

       While GoPlus does reference the Letter in the Amended Complaint, that single reference
does not automatically make the Letter central to its claims.  Instead, the critical inquiry is whether
the Letter is "a necessary part" of GoPlus's "effort to make out" either its breach of contract claim
or its misrepresentation claim.  See Kalpakchian, 832 F. App'x at 583 (quoting Day, 400 F.3d at
1276).  Here, the Letter, which is a post-contractual correspondence regarding Crown's proposed
solution for GoPlus's shelving problems, is not necessary for GoPlus to make out either of its
claims.  Even though the Letter might be central to Crown's accord and satisfaction defense, the
centrality analysis focuses on GoPlus's claims and not Crown's affirmative defenses.  See Day,
400 F.3d at 1276 ("In Horsley v. Feldt, we held that the court may consider a document attached
to a motion to dismiss without converting the motion into one for summary judgment if the
attached document is . . . central to the *plaintiff's claim* . . . ." (citation omitted) (emphasis added));
Future Fibre Techs. Pty. Ltd., 2009 WL 10669938, at *2 ("Though [the attached document] is
central to [the defendant's] affirmative defense, it is not central to Plaintiff's claim and cannot be
considered for purposes of a 12(c) motion.").  Thus, the Court cannot consider the Letter without
converting the Motion to one for summary judgment.

### C.   Exhibits G and H are not Central to GoPlus's Claims

The Court also concludes that it cannot consider the Preliminary Racking Analyses for the Georgia Warehouse and GoPlus's Chicago warehouse (Exhibit G) and the Georgia Warehouse's engineering design layout (Exhibit H) without converting Crown's Motion because these documents likewise are not central to either of GoPlus's claims.  Crown attaches Exhibits G and H to its Answer to the Amended Complaint in an effort to contradict GoPlus's allegation that its Chicago warehouse has shelving with a 3,305-pound weight capacity and that the Georgia Warehouse's shelving was supposed to match this.  (Doc. 24, p. 3; doc. 26, p. 24.)  However, neither exhibit is attached to or even referenced in the Amended Complaint.  (See doc. 22.)  Furthermore, "a document is not 'central' merely because it is directly responsive to a factual allegation." Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007).  While Exhibits G and H respond to GoPlus's factual allegations, the exhibits are not central to GoPlus's claims, and the Court cannot consider them on a motion for judgment on the pleadings.

Accordingly, the Contract (Exhibit A to Defendant's Answer to the Amended Complaint), is the only document (other than the Amended Complaint and the Answer to the Amended Complaint) that the Court will consider in ruling on the Motion for Judgment on the Pleadings.  While the Court could, as referenced above, convert the Motion for Judgment on the Pleadings to a Motion for Summary Judgment, which would permit it to consider Exhibits B through H (as well as other matters outside of the pleadings), the Court declines to do so.  First, although the Court has authority to *sua sponte* convert the Motion, see 5C ARTHUR R. MILLER, MARY KAY KANE & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2020), neither party has flatly requested conversion.  GoPlus comes close by arguing that the Motion should either be denied or converted "with time allotted for [it] to conduct discovery to support its response," (doc.

28, p. 5), while Crown conspicuously neglects to request conversion and focuses instead on arguing that the Court may consider all the exhibits without needing to convert the Motion to one for summary judgment.  (Doc. 26, pp. 6–8; doc. 30, pp. 2–3.)  Additionally, given the fact that Crown filed the Motion two days after filing its Answer to the Amended Complaint, and there has been no discovery, the action is in its infancy, and the parties are ill-equipped at this early stage to present all the evidence that would be required for a proper Rule 56 determination.  Accordingly, the Court will proceed with analyzing whether the pleadings and the Contract show that Crown is entitled to a judgment in its favor pursuant to Federal Rule of Civil Procedure 12(c).

## II.    Choice of Law

In this diversity action, the Court must apply the choice-of-law rules of its forum state of Georgia to determine which state's substantive laws apply.  Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998).  The claims discussed in this Order resound in contract and tort.  The Contract contains a choice of law provision, wherein the parties agreed that the Contract "shall be governed by and construed in accordance with the Uniform Commercial Code as adopted by Ohio under which jurisdiction Buyer consents."  (Doc. 24-1, p. 5.)  Georgia courts generally enforce choice-of-law provisions unless the application would contravene public policy.  See Becham v. Synthes USA, 482 F. App'x 387, 390–91 (11th Cir. 2012) (per curiam).

Crown asserts that the choice-of-law provision stipulates that Ohio law governs both the breach of contract claim and misrepresentation claim.  (Doc. 30, pp. 3–5.)  GoPlus, however, argues that the choice of law provision is limited in that it requires only that the Contract be construed in accordance with Ohio's version of the Uniform Commercial Code (hereinafter, the "U.C.C.") (which, according to GoPlus, is "effectively identical" to Georgia's version).[4]  (Doc.

---

[4]  The parties agree that the contract is governed by the Uniform Commercial Code (hereinafter, the "U.C.C.").  (Doc. 22, p. 5; doc. 24, pp. 4–5.)

28, p. 8.)  GoPlus argues that this limited provision does *not* require Ohio law to otherwise be applied and that the Court instead must conduct Georgia's choice of law analysis, the result of which is that Georgia law governs both of GoPlus's claims.  (See id. at pp. 8–9.)  Neither party argues that the choice of law provision violates public policy.

### A.      Ohio Law Governs the Breach of Contract Claim

As described above, both parties agree that, under the terms of the choice of law provision, Ohio's version of the U.C.C. governs the Contract.  See Agrico Canada Ltd. v. Helm Fertilizer Corp., No. 8:08-cv-2132-T-33EAJ, 2009 WL 4730525, at *5 (M.D. Fla. Dec. 6, 2009) (applying the U.C.C. under Florida law to a maritime contract because "[t]he parties' Sales Contract contained a clear choice of law provision indicating that the contract 'shall be constructed in accordance with the Uniform Commercial Code as enacted in the State of Florida'").  While the provision does not state that Ohio law in its entirety governs the Contract, GoPlus's breach of contract claim arises under the U.C.C.  See Tubelite Co., Inc. v. Original Sign Studio, Inc., 891 N.E.2d 820, 824 (Ohio Ct. App. 2008) (determining that the U.C.C.—not common law—governed breach of contract claim); Shelly Materials, Inc. v. Great Lakes Crushing, Ltd., No. 2013–P–0016, 2013 WL 6810660, at *7 (Ohio Ct. App. Dec. 23, 2013) (determining that the U.C.C.—not common law—governed whether parties entered into a contract); Sack v. Cessna Aircraft Co., 676 F. App'x 887, 891 (11th Cir. 2017) ("[P]laintiff asserts two separate claims of breach of contract, one under Kansas' incorporation of the U.C.C. and one, apparently, under the common law.  The problem is that the U.C.C. displaces the common law where the U.C.C. is applicable, and the U.C.C. has its own breach of contract rules.").  Thus, the Court will apply Ohio law to GoPlus's breach of contract claim.

### B.     Georgia Law Governs the Misrepresentation Claim

"[T]he Eleventh Circuit, when applying Georgia law, has routinely held that a choice-of-law provision allows contracting parties to select which state's law governs contractual rights and duties, but does not incorporate all substantive law of that state." Ins. House, Inc. v. Ins. Data Processing, Inc., No. 1:07-CV-0286-BBM, 2008 WL 11333547, at *6 (N.D. Ga. Nov. 19, 2008) (citing Manuel v. Convergys Corp., 430 F.3d 1132, 1139–40 (11th Cir. 2005) ("Under Georgia conflicts of law rules, the choice of law provision in the contract will not apply to the tort claim of misappropriation of trade secrets."); Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc., 133 F.3d 1405, 1409 (11th Cir. 1998)).  For example, in Young v. W.S. Badcock Corp., the Georgia Court of Appeals held that a choice of law provision, which stated that "this Agreement and the terms hereof shall be governed by and construed in accordance with the laws of the State of Florida," did not encompass the plaintiff's fraudulent misrepresentation claim.  474 S.E.2d 87, 88 (Ga. Ct. App. 1996) ("[T]he [choice-of-law] provision is not applicable in determining whether plaintiffs have set forth a valid tort claim.").  Here, the choice of law provision, which contains similar language to the choice of law provision in Young, does not encompass GoPlus's misrepresentation claim.  See Baxter v. Fairfield Fin. Servs., Inc., 704 S.E.2d 423, 428 (Ga. Ct. App. 2010) (choice of law provision stating that an agreement "shall be governed by the laws of Florida" applied only to enforcing the contractual duties and did not apply to tort defenses); Ins. House, Inc., 2008 WL 11333547, at *6 (choice of law provision stating that "all matters *arising out of or relating to this Agreement*, shall be governed by the laws of . . . Pennsylvania" did not encompass fraud claim) (emphasis in original).  Thus, the Court must perform Georgia's choice of law analysis regarding torts to determine which state's law applies.

"Under Georgia's conflict-of-law rules regarding tort cases, the substantive law of the place where the tort allegedly was committed is the law by which liability shall be determined." Young, 474 S.E.2d at 88. "The general rule is that 'the place of wrong, the locus delicti, is the place where the injury sustained was suffered rather than the place where the act was committed . . . .'" Risdon Enters., Inc. v. Colemill Enters., Inc., 324 S.E.2d 738, 740 (Ga. Ct. App. 1984). Here, while GoPlus is a California corporation, the alleged misrepresentation concerned shelving shipped to and installed in the Georgia Warehouse, and the economic loss suffered by GoPlus occurred in Georgia. Therefore, GoPlus's injury stemming from Crown's alleged misrepresentation occurred in Georgia, and Georgia law governs the claim.

## III.   GoPlus's Breach of Contract Claim

In its breach of contract claim, GoPlus alleges that, "[u]nder the terms of the parties' contract, as informed by GoPlus's unequivocal requirements for bids and the parties' course of dealing, Crown was required to supply GoPlus with shelving facilities that met GoPlus's required sizing specifications and weight tolerances." (Doc. 22, p. 5.) GoPlus claims that Crown failed to provide such shelving facilities, and thereby committed a common law breach of contract and a delivery of non-conforming goods under U.C.C. § 2-714. (Id. at pp. 5–6.) Crown, however, asserts that it is entitled to judgment in its favor based on the pleadings because "(1) the parties entered into an accord and satisfaction that resolved the issues on which GoPlus attempts to base its claim and (2) GoPlus has not alleged any facts that would prove any breach of contract by Crown." (Doc. 26, p. 8.) The Court addresses each argument in turn.

### A.   Crown is Not Entitled to Judgment on the Pleadings Based on its Accord and Satisfaction Defense.

Crown claims that the Letter operates as an accord and satisfaction and, thus, bars GoPlus's claims. (Doc. 26, pp. 9–11, 19.) "Accord and satisfaction is an affirmative defense to a claim for

money damages.  If a party against whom a claim for damages is made can prove accord and satisfaction, that party's debt is discharged by operation of law."  Byars v. RLG Builder, Inc., 933 N.E.2d 310, 314 (Ohio Ct. App. 2010) (quoting Allen v. R.G. Indus. Supply, 611 N.E.2d 794, 797 (Ohio 1993)).[5]  "The defense of accord and satisfaction requires proof on three elements: (1) the plaintiff accepted the defendant's offer to resolve the plaintiff's claim; (2) the defendant satisfied its undertaking to the plaintiff; and (3) the offer and acceptance were supported by consideration."  Bd. of Educ. Toronto City Schs. v. Am. Energy Utica, LLC, 152 N.E.3d 378, 398 (Ohio Ct. App. 2020) (citing Allen, 611 N.E.2d at 797).  Furthermore, "[t]wo safeguards are built into the doctrine of accord and satisfaction: (1) the parties must have a good-faith dispute about the debt and (2) the creditor must be given reasonable notice that the payment was intended as full satisfaction of the alleged debt."  Coburn v. Auto-Owners Ins. Co., 938 N.E.2d 400, 410 (Ohio Ct. App. 2010) (citing Allen, 611 N.E.2d at 797–98).  "Since accord and satisfaction is an affirmative defense . . . the burden of proving it rests upon the party who alleges the execution of such agreement and seeks to avail himself of the benefit thereof."  Kirk Williams Co. v. Six Indus., Inc., 463 N.E.2d 1266, 1270 (Ohio Ct. App. 1983)).

As discussed in Discussion Section I, supra, the only external exhibit the Court will consider in addressing the Motion for Judgment on the Pleadings is the Contract.  The Court will not consider the Letter, which serves as the basis for Crown's accord and satisfaction defense, nor will it consider any other exhibits Crown attached to its Answer to the Amended Complaint.  See

---

[5] While a contract of accord and satisfaction is a separate agreement between the parties, the Court finds that Ohio law governs the possible accord and satisfaction in this case because Ohio law governs the Contract.  See A-T-O, Inc. v. Stratton & Co., Inc., 486 F. Supp. 1323, 1326 (N.D. Ga. 1980) ("In general terms, an accord and satisfaction should usually be governed by the same law as the main contract."); Eldon Indus., Inc. v. Paradies & Co., 397 F. Supp. 535, 539 (N.D. Ga. 1975) ("[I]t seems patently reasonable to rule that the law governing the underlying contract should also govern the contract of accord and satisfaction.").

Discussion Section I, <u>supra</u>.  Without the Letter, Crown cannot make out its accord and satisfaction affirmative defense as nothing in the Amended Complaint indicates that the parties entered into such an agreement or that the Letter did anything more than state Quiliza's position that "Crown has designed and quoted your storage rack project per your specific address and load capacities."[6] (<u>See</u> doc. 22.)  Thus, taking the allegations in the Amended Complaint as true and construing them in GoPlus's favor, the Court declines to grant Crown's Motion on the basis of the accord and satisfaction defense.  <u>See</u> <u>Gray v. Evercore Restructuring L.L.C.</u>, 544 F.3d 320, 324 (1st Cir. 2008) ("Where a court grants a . . . Rule 12(c) motion based on an affirmative defense, the facts establishing that defense must . . . be 'definitely ascertainable from the complaint and other allowable sources of information' . . . ."); <u>Edgenet, Inc. v. Home Depot U.S.A., Inc.</u>, 658 F.3d 662, 665 (7th Cir. 2011) ("When the complaint itself contains everything needed to show that the defendant must prevail on an affirmative defense, then the court can resolve the suit on the pleadings under Rule 12(c)."); <u>Howard Indus., Inc. v. Ace Am. Ins. Co.</u>, No. 2:13-cv-0677, 2014 WL 978445, at *3 (S.D. Ohio Mar. 12, 2014) ("[A] court may grant a Rule 12 motion on the basis of an affirmative defense only if that defense appears on the face of the complaint.") (citing <u>Jones v. Bock</u>, 549 U.S. 199, 215 (2007); <u>Bishop v. Lucent Techs., Inc.</u>, 520 F.3d 516, 520 (6th Cir. 2008)).  This ruling is consistent with the principle that a plaintiff is not required to negate an affirmative defense in the complaint.  <u>See, e.g.</u>, <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).

---

[6]  By saying that Crown cannot succeed on the theory of accord and satisfaction without the Letter, the Court does not intend to indicate or imply—one way or another—whether the Letter would support Crown's "accord and satisfaction" argument if the Letter were to be considered by the Court.

**B.     Crown is Not Entitled to Judgment on the Pleadings because GoPlus Has Alleged Facts that Could Show Crown Breached the Agreement.**

GoPlus alleges that "the terms of the [Contract], as informed by GoPlus's unequivocal requirements for bids and the parties' course of dealing," show that the parties agreed that Crown would supply and install shelving with a 3,305-pound weight capacity in the Georgia Warehouse and that Crown breached this agreement.  (See doc. 22, pp. 5–6.)  Crown argues that the breach of contract claim fails because: "(1) the Contract plainly and unambiguously sets forth the sizing specifications of the components to be used on the project, and there is no allegation that Crown failed to supply the identified components or otherwise breached the explicit terms of the Contract;" and "(2) the Contract is fully integrated, and prior negotiations or prior agreements cannot be used to contradict its terms."  (Doc. 26, p. 12.)

The Contract identifies and lists the specific materials and the labor and services (i.e., "Install Above Listed Material") that Crown was to provide for the Georgia Warehouse.  (Doc. 24-1, p. 2.)  While there is no provision in the Contract memorializing the specific agreed-upon or required or expected size or weight capacity of any component part or of the shelving system as a whole, the Contract does state that "[p]ricing and related bill of materials is based on specifications and approximate floor & pallet capacities provided by the customer."  (Id. at p. 4.)

Under Ohio law, when interpreting a contract, a court's role "is to give effect to the intent of the parties to the agreement."  Westfield Ins. Co. v. Galatis, 797 N.E.2d 1256, 1261 (Ohio 2003). Generally, at common law in Ohio, only where the language of a writing "is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions."  Shifrin v. Forest City Enters., Inc., 597 N.E.2d 499, 501 (Ohio 1992). "Ohio's U.C.C., however, rejects the common law rule that extrinsic evidence is admissible only where the terms

of a writing are ambiguous." <u>Metal Seal Precision, Ltd. v. Good Time Outdoors, Inc.</u>, 128 N.E.3d

678, 687 (Ohio Ct. App. 2018) (citing Ohio Rev. Code § 1302.05, Official Comment 1(c)).  Ohio

Revised Code Annotated Section 1302.05 instead provides:

> Terms with respect to which the confirmatory memoranda of the parties agree or
> which are otherwise set forth in a writing intended by the parties as a final
> expression of their agreement with respect to such terms as are included therein
> may not be contradicted by evidence of any prior agreement or of a
> contemporaneous oral agreement but may be explained or supplemented:
>
> > (A) by course of performance, course of dealing, or usage of trade
> > as provided in section 1301.303 of the Revised Code; and
>
> > (B) by evidence of consistent additional terms unless the court finds
> > the writing to have been intended also as a complete and exclusive
> > statement of the terms of the agreement.

Ohio Rev. Code Ann. § 1302.05.

Thus, under the parol evidence rule set out in Ohio's U.C.C., terms in a writing intended

to serve as the parties' final expression of those terms may not be contradicted by evidence of any

prior agreement or contemporaneous oral agreement.  <u>Id.</u>  However, the written terms may be

explained or supplemented by evidence of the parties' course of dealing,[7] and evidence of

consistent additional terms may also explain or supplement the written terms of an agreement

"unless the court finds the writing to have been intended also as a complete and exclusive statement

of the terms of the agreement."  <u>Id.</u>  Relevant to the present case, the Court emphasizes that the

U.C.C. parol evidence rule distinguishes between course of dealing and other forms of parol

evidence.  As described above, as long as course of dealing evidence does not *contradict* the

parties' written terms, then course of dealing evidence is admissible to explain or supplement the

parties' written agreement, even if the parties intended the writing to serve as a complete and

---

[7] "A 'course of dealing' is a sequence of conduct concerning previous transactions between the parties to
a particular transaction that is fairly to be regarded as establishing a common basis of understanding for
interpreting their expressions and other conduct."  Ohio Rev. Code § 1301.303(B).

exclusive statement of their agreement.  Id.; see also Camargo Cadillac Co. v. Garfield Enters., Inc., 445 N.E.2d 1141, 1145 (Ohio Ct. App. 1982) ("If . . . the writing was intended to be 'a complete and exclusive statement of the terms of the agreement' (totally integrated), then . . . it cannot be explained or supplemented *except by* a course of dealing, usage of trade or a course of performance.") (emphasis added).  Nonetheless, the Court may only consider any proffered "consistent additional terms" if it finds that the Contract was not a "complete and exclusive statement of the terms of the agreement."  Ohio Rev. Code Ann. § 1302.05(B).

Accordingly, "when a court must address the issue of contradicting, explaining or supplementing a writing, one of the first determinations to be made under [Ohio Rev. Code Ann. § 1302.05] is whether the writing is 'a complete and exclusive statement of the terms of the agreement' between the parties."  Camargo Cadillac Co., 445 N.E.2d at 1144.  When making this determination, "the court must look outside the four corners of the document and consider the surrounding facts and circumstances."  Metal Seal Precision, Ltd., 128 N.E.3d at 687.

In the present case, the Contract contains what Crown alleges to be a merger clause, which provides that "[t]his agreement supersedes all prior written or oral agreements with respect to the subject matter hereof."  (Doc. 24-1, p. 5.)  This provision, however, does not specifically state that the Contract constitutes the "entire agreement" (indeed, that phrase is not used at all), and it says nothing about pre-contractual *representations*; it only operates to "supersede" any "prior written or oral agreements."  But see Marathon Petroleum Co. v. Noil Petroleum Corp., No. 3:16-cv-2694, 2020 WL 435419, at *4 (N.D. Ohio Jan. 28, 2020) (merger clause stating "[t]his Agreement contains the entire agreement of the parties with respect to its subject matter" precluded consideration of the parties' pre-contractual representations), aff'd, 835 F. App'x 1 (6th Cir. 2020); J.A. Indus., Inc. v. All Am. Plastics, Inc., 726 N.E.2d 1066, 1075 (Ohio Ct. App. 1999) ("[T]he

merger clause of the agreement expressly states that the contract 'constitutes the entire agreement of the parties,' and evidence of consistent additional terms is therefore precluded by [Ohio Rev. Code Ann.] § 1302.05(B)."). Crown has not pointed the Court to any Ohio case law requiring the Court to conclude that, based on the limited language used here, the Contract constituted a complete and exclusive statement of all of the terms understood by the parties.

Additionally, although neither party addressed it in their briefs, the provision in the Contract stating that "[p]ricing and related bill of materials is based on specifications and approximate floor & pallet capacities provided by the customer," (doc. 24-1, p. 4), appears to plausibly be a reference to the "required sizing specifications and weight tolerances" that GoPlus alleges it included in the request for bids (which prompted the parties to negotiate and ultimately execute the at-issue Contract), (see doc. 22, p. 2). Thus, the Contract explicitly references GoPlus's pre-contractual provision of "specifications and . . . capacities" and indicates that the quoted materials were selected *based on* these specifications and capacities. Consequently, evidence concerning GoPlus's pre-contractual provision of weight capacity and sizing requirements could supply a "consistent additional term" which could ultimately show that the parties intended for Crown to be contractually obligated to supply and install shelving of a specific size and with a 3,305-pound weight capacity in the Georgia Warehouse.

Likewise, there is currently no basis for holding that any and all evidence concerning the parties' course of dealing would necessarily be excluded since there is no indication that all such evidence would contradict the existing terms in the Contract. According to the Amended Complaint, Crown had installed shelving systems in other GoPlus warehouses that had the same specifications and capacity requirements that GoPlus had indicated it needed in the Georgia Warehouse. This evidence of prior transactions between GoPlus and Crown could show that—

consistent with its provision in the Contract that the pricing and materials it was agreeing to provide were "based on specifications and . . . capacities provided by [GoPlus]"—Crown understood that it was obligating itself to supply and install shelving with a 3,305-pound weight capacity in the Georgia Warehouse.  Additionally, GoPlus has not alleged anything about the parties' course of dealing that would clearly contradict any of the other terms of the written Contract.  Accordingly, Crown has not shown a basis for granting judgment on the pleadings in its favor on GoPlus's breach of contract claim.

## IV.   GoPlus's Misrepresentation Claim

GoPlus also brings a tort claim for intentional or negligent misrepresentation.  (Doc. 22, p. 6.)   According to GoPlus, Crown—through Quiliza's representations to Wu in September, October, and November 2019—misrepresented to GoPlus that the shelving facilities would satisfy GoPlus's size and weight requirements.  (Id. at pp. 6–7.)  Crown argues that the misrepresentation claim should be dismissed because (1) "a claim for misrepresentation fails as a matter of law if the alleged misrepresentation is contradicted by the terms of [the Contract]" and the plaintiff could not have justifiably relied on it; (2) Georgia's economic loss rule bars the claim; and (3) "there was no misrepresentation because Crown provided shelving for [the Georgia Warehouse] that had the same rated weight capacity as that of GoPlus's Chicago warehouse."  (Doc. 26, pp. 18–24.)

In advancing a negligent misrepresentation claim, a plaintiff must show that the defendant made a false representation on which the plaintiff justifiably relied.  See, e.g., Glob. Payments, Inc. v. InComm Fin. Servs., Inc., 843 S.E.2d 821, 845 (Ga. 2020).   Justifiable reliance is an essential element of both a negligent misrepresentation claim and a fraudulent (intentional) misrepresentation claim.  Novare Grp., Inc. v. Sarif, 718 S.E.2d 304, 309 (Ga. 2011).  However, "[w]here a purchaser affirms a contract that contains a merger or disclaimer provision, he is

estopped from asserting reliance on a representation that is not part of the contract." Id.  For example, in Novare Group, the Georgia Supreme Court held that condominium buyers could not have justifiably relied on the defendant developer's pre-contractual oral representations because the written purchase agreements for the condominiums contained comprehensive merger clauses.[8] 718 S.E.2d 304, 309 (Ga. 2011).  The developers had advertised "spectacular city views" and advised the buyers that any future development surrounding the 26-story building would be low or mid-rise buildings.  Id. at 306.  After the developers built a 46-story building across the street from the condominiums, the buyers filed claims for fraud and negligent misrepresentation.  Id.  The Georgia Supreme Court rejected the buyers' claims, ruling that the buyers could not have justifiably relied on the developer's representations because the merger clause in their contracts prevented them from relying on any representations made outside of the agreements.  Id. at 309.

The Court finds Crown's first argument unpersuasive.  Crown's alleged representations do not contradict the Contract's terms.  As discussed above, (see Discussion Section III.B, supra), the Contract contains a provision stating that "[p]ricing and related bill of materials is based on specifications and approximate floor & pallet capacities provided by the customer," (doc. 24-1, p. 4).  This language, in and of itself, appears to indicate that Crown not only was provided the size specification and weight capacity requirements alleged by GoPlus, but that it had selected the component parts listed in its quotation based on and in order to meet those requirements.  Thus,

---

[8]  The merger clauses in Novare Group, stated:

> This agreement contains the entire agreement between the parties hereto.  No agent, representative, salesman or officer of the parties hereto has authority to make, or has made, any statements, agreements, or representations, either oral or in writing, in connection herewith, modifying, adding to, or changing the terms and conditions hereof and neither party has relied upon any representation or warranty not set forth in this Agreement.  No dealings between the parties or customs shall be permitted to contradict, vary, add to, or modify the terms hereof.

718 S.E.2d at 307 n.2.

the alleged pre-contractual representations by Crown—that it understood and would meet the necessary weight capacity and sizing requirements—appear consistent with Crown's statement in the Contract that it selected the various component parts based on these requirements.  As a result, GoPlus's allegation that Crown represented that the specified shelving components would have a weight capacity of 3,305 pounds appears, from the pleadings and the Contract, to be consistent with, and not contradictory of, the terms of the Contract and thus could support the element of justifiable reliance.

Second, for the reasons described above, (see Discussion Section III.B, supra), the purported merger clause does not appear to encompass the at-issue pre-contractual representations. The clause provides, "This agreement supersedes all prior written or oral agreements with respect to the subject matter hereof."  (Doc. 24-1, p. 5.)  This merger clause lacks the "entire agreement," "representation," and/or "understandings" language contained in what Georgia courts have termed "standard" merger clauses.  Compare First Data POS, Inc. v. Willis, 546 S.E.2d 781, 783, 785 (Ga. 2001) (clause stating that the "Agreement . . . constitutes the *entire agreement* between the parties with respect to the subject matter contained herein and supercedes [sic] all prior agreements *and understandings*, both oral and written by and between the parties hereto with respect to the subject matter hereof" is a "standard merger clause") (emphasis added) and Chhina Fam. P'ship v. S-K Grp. of Motels, Inc., 622 S.E.2d 40, 43 (clause stating that "[t]his Agreement, together with all exhibits and schedules hereto, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supercedes [sic] all prior agreements, *understandings, negotiations, and discussions*, whether oral or written, of the parties" is a standard merger clause) (emphasis added), with Raysoni v. Payless Auto Deals, LLC, 766 S.E.2d 24, 26 (Ga. 2014) (clause stating that "NO SALESMAN VERBAL REPRESENTATION IS BINDING ON THE COMPANY" is only a

partial merger clause).  Crown has not pointed to any Georgia case law requiring the Court to conclude that, based on the limited language used here, the Contract constituted a complete and exclusive statement of the terms of the agreement between the parties precluding GoPlus from reasonably relying on any pre-contractual representations regarding the basis upon which Crown was selecting the shelving components listed in the Contract.  Thus, because the clause in the Contract applies only to "agreements" and lacks the "representation" and/or "understandings" language (or some statement that the Contract contains the "entire agreement"), the Court is not willing to say, as a matter of law, that the clause is a "standard merger clause" that precludes consideration of Crown's alleged pre-contractual representations to GoPlus.

Finally, the Court finds Crown's other arguments unpersuasive.  First, regarding the economic loss rule, as Crown acknowledges in its Motion, (doc. 26, p. 23 n.13), Georgia recognizes a misrepresentation exception to the rule.  See, e.g., Advanced Drainage Sys., Inc. v. Lowman, 437 S.E.2d 604, 607 (Ga. Ct. App. 1993).  Thus, the economic loss rule does not automatically preclude GoPlus's misrepresentation claim.  Second, while Crown argues that no false representations were made because "[t]he components that Crown installed in the Georgia [W]arehouse were . . . the same rated weight capacity of the components installed in the Chicago warehouse," (doc. 26, p. 24), GoPlus alleges differently.  According to GoPlus, the Chicago warehouse's shelving was rated at 3,305 pounds, and the Georgia Warehouse's shelving was not, despite Crown's assurances that the shelving in the Georgia Warehouse would match the shelving in the Chicago warehouse.  (Doc. 22, p. 4.)  Taking the allegations in the Amended Complaint as true, the Court obviously cannot find that the Chicago warehouse shelving had a weight capacity rating that matched that of the Georgia Warehouse's shelving.  Accordingly, Crown is not entitled

to judgment in its favor based on the pleadings as to GoPlus's negligent and fraudulent misrepresentation claims (Count II).

## CONCLUSION

In light of the foregoing, the Court **DENIES** Crown's Motion for Judgment on the Pleadings.  (Doc. 26.)  Additionally, the Court **DENIES as moot** Crown's Motion for Hearing.  (Doc. 17.)  Finally, the Court **LIFTS** the stay on this case, (doc. 27), and **ORDERS** the parties to conduct a Rule 26(f) conference within **fourteen (14) days** from the filing of this Order and to file a Rule 26(f) Report within **seven (7) days** from the Rule 26(f) conference.[9]  Failure to comply with these directives may result in the dismissal of this action or striking of the answer.

**SO ORDERED**, this 31st day of March, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[9]  The Court acknowledges that the parties previously held a Rule 26(f) conference and submitted a Rule 26(f) Report.  However, the Rule 26(f) Report that they submitted frequently referred to the filing of the Motion for Judgment on the Pleadings and the anticipated discovery stay.  Thus, it lacked much of the substantive information that the form requests and requires.  The Court reminds the parties that the Rule 26(f) Report shall conform to the language and format of Judge Baker's Rule 26(f) Report Form located on the Court's website www.gasd.uscourts.gov under "Forms" and "Judge Baker- Instructions and Forms."